*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMMIE LAMONT DAVIS,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
9:36 AM

No. 366132
Berrien Circuit Court
LC No. 2019-004225-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of driving while license suspended, MCL 257.904(1), and failure to stop at the scene of an accident resulting in serious impairment or death, MCL 257.617(2).[1] Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to eight days in jail for the driving while license suspended conviction and 3 to 40 years' imprisonment for the failure to stop conviction. We affirm.

## I. BACKGROUND

This case arises out of defendant's failure to stop at the scene of an accident on Red Arrow Highway, a four-lane highway, near Stevensville, Michigan, at around 2:30 p.m. on November 20, 2019. While driving his sports utility vehicle (SUV) northbound on Red Arrow, defendant fell asleep and struck a bicyclist, Joel Crider, Jr., who was also traveling northbound. As a result of injuries sustained in the accident, Crider died in a medical rehabilitation center more than two months later on February 2, 2020.[2] Eyewitness testimony indicated that defendant did not stop at

---

[1] The jury found defendant not guilty of reckless driving causing death, MCL 257.626(4), and reckless driving causing serious impairment, MCL 257.626(3).

[2] Crider also suffered from preexisting health issues that were determined to be contributory factors in his eventual death more than two months after the accident. The cause of death is not at issue in this appeal. Defendant's brief on appeal acknowledges that Crider "died of his injuries [sustained in the accident] and from other preexisting health issues."

the accident scene but stopped about 200 or 300 feet away and then continued driving. Police arrested defendant later that day. There was damage to the front passenger side of his SUV. He admitted being in the accident but said that he thought he only hit a trashcan.

Defendant testified at trial that he thought he hit a trashcan or mailbox and did not realize he hit a person. He had been sick the previous two days and staying at the Blue Chip Casino in Michigan City, Indiana. At the time of the accident, he was traveling back to the Benton Harbor area to go to a hospital. He took either Dayquil or Nyquil that morning but could not remember which he took. According to defendant, he "dozed off" on I-94 and hit the rumble strips a few times. He then stopped at a gas station near the Sawyer exit to take "a quick nap." After resting at the gas station for 5 or 10 minutes, he drove on Red Arrow and was "dozing or falling asleep" when the accident occurred. Defendant did not reveal the gas station stop to the police or the prosecutor before trial. After hearing defendant's trial testimony, the police learned that the two gas stations at the Sawyer exit no longer had any surveillance video for the date of the accident, which was more than three years before the trial.

## II. DISCUSSION

## A. CHARGING DEFECT

Defendant argues that his failure to stop conviction must be vacated because there was no allegation in the charging documents that he knew he was involved in an accident with an individual or another vehicle. We disagree.

Defendant did not preserve his claim that the charging document was deficient. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Danto*, 294 Mich App 596, 605; 822 NW2d 596 (2011) (citation and quotation marks omitted). This general rule "is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to the court" in a timely fashion such that the court and the adverse party have the opportunity to respond. *Napier v Jacobs*, 429 Mich 222, 227-229; 414 NW2d 862 (1987), quoting 3 LaFave & Isreal, Criminal Procedure, § 26.5(c), pp 251-252. Defense counsel's argument to the jury that a not guilty verdict should be entered because defendant did not know the accident involved a person is not akin to an objection to the adequacy of the charging document. Raising an argument in an unrelated context during trial is not sufficient to preserve it for appellate review. *Danto*, 294 Mich App at 605.

Because the issue is unpreserved, this Court's "review is limited to determining whether defendant has demonstrated a plain error that affected substantial rights." *People v Noble*, 238 Mich App 647, 658; 608 NW2d 123 (1999). Under the plain-error standard, a defendant must show that an error occurred, it was clear or obvious, and it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is required only if the defendant is innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*. at 763-764.

"The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d

68 (2009). "A complaint is a written accusation that a named or described person has committed a specified criminal offense. The complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense." MCR 6.101(A). Similarly, an "information must set forth the substance of the accusation against the defendant and the name, statutory citation, and penalty of the offense allegedly committed." MCR 6.112(A).

In this case, the charging information includes that which is required by MCR 6.101(A) and MCR 6.112(A). Specifically, Count 2 of both the original complaint[3] filed on November 21, 2019, and the January 28, 2020 felony information charge defendant with violating MCL 257.617. The original complaint alleged that defendant

> did, being the driver of an automobile, who knew or had reason to know that he/she had been involved in an accident upon Red Arrow Highway, property open to travel by the public, did fail to immediately stop the vehicle at the scene of the accident and remain there until he or she had complied with the requirements of MCL 257.619. [sic] and the accident resulted in injury to Joel Crider, Jr; contrary MCL 257.617a . . . .

This is substantially similar to Count 2 of the January 28, 2020 felony information, which defendant quotes in his brief, as follows:

> [Defendant], being the driver of an automobile, who knew or had reason to believe that he/she had been involved in an accident upon Red Arrow Highway, property open to travel by the public, [failed to] stop the vehicle at the scene of the accident and remain there until he or she had complied with the requirements of MCL 257.619; and the accident resulted in serious impairment of a body function or death of Joel Crider, Jr; contrary to MCL 257.617(2).

Two amended felony informations were later filed but are not relevant to this issue. These charging documents provide sufficient substance of the crime for which he was charged and the statutory citation. Defendant was convicted of violating MCL 257.617, which reads as follows:

> (1) The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident upon public or private property that is open to travel by the public shall immediately stop his or her vehicle at the scene of the accident and shall remain there until the requirements of section 619 are fulfilled or immediately report the accident to the nearest or most convenient police agency or officer to fulfill the requirements of section 619(a) and (b) if there is a reasonable and honest belief that remaining at the scene will result in further harm. The stop shall be made without obstructing traffic more than is necessary.

> (2) Except as provided in subsection (3), if the individual violates subsection (1) and the accident results in serious impairment of a body function or

---

[3] For readability, we have declined to insert "[sic]" after minor typographical errors.

-3-

death, the individual is guilty of a felony punishable by imprisonment for not more than 5 years or by a fine of not more than $5,000.00, or both.

(3) If the individual violates subsection (1) following an accident caused by that individual and the accident results in the death of another individual, the individual is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not more than $10,000.00, or both.

This Court has described MCL 257.617 as "criminaliz[ing] leaving the scene after being involved in an accident" and, with respect to MCL 257.617(2) and MCL 257.617(3), leaving the scene after being involved in an accident that results in serious impairment of a body function or death. *People v Dumback*, 330 Mich App 631, 638; 950 NW2d 493 (2019). The Court of Appeals wrote:

To support conviction under [MCL 257.617(1)], the prosecution must establish that the driver of a vehicle was involved in an accident, knew or had reason to know that the accident occurred and did not stop or report it. To support a conviction under Subsection (3), the prosecution must again establish that the driver of a vehicle was involved in an accident, knew or had reason to know that the accident occurred, and did not stop or report the accident, but the prosecution must also prove that the driver caused the accident and that another person died as a result of the accident….These additional requirements must be presented to and found by the jury. [*Dumback*, 330 Mich App at 642.]

Contrary to defendant's claim on appeal, knowledge or reason to believe that defendant had been involved in an accident with an individual or with another vehicle is not found in the language of MCL 257.617 or in this Court's previous analysis of it. Such knowledge is a requirement to show compliance with MCL 257.619, which reads as follows:

The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident with an individual or with another vehicle that is operated or attended by another individual shall do all of the following:

(a) Give his or her name and address, and the registration number of the vehicle he or she is operating, including the name and address of the owner, to a police officer, the individual struck, or the driver or occupants of the vehicle with which he or she has collided.

(b) Exhibit his or her operator's or chauffeur's license to a police officer, individual struck, or the driver or occupants of the vehicle with which he or she has collided.

(c) Render to any individual injured in the accident reasonable assistance in securing medical aid or arrange for or provide transportation to any injured individual.

However, MCL 257.619 is incorporated into MCL 257.617 only to the extent that compliance with MCL 257.619 is one way to avoid being found in violation of MCL 257.617.

MCL 257.617(1) refers to a driver "who knows or who has reason to believe that he or she has been involved in an accident . . . ." MCL 257.617(2), under which defendant was charged and convicted, applies if an individual violated MCL 257.617(1) and the accident resulted in serious impairment or death. The knowledge required for conviction under any subsection of MCL 257.617 is knowledge or reason to believe that a person was involved in an accident—nothing further.

If the driver knows or as has reason to believe that the accident was with "an individual" or another vehicle, the driver may avoid violating MCL 257.617 by remaining at the scene long enough to provide the required information or assistance described in MCL 257.619. MCL 257.617(1). However, a driver could also avoid violating MCL 257.617 by simply stopping at the scene of the accident or reporting it. Compliance with MCL 257.619 is not an element of MCL 257.617 under either the plain language of the statute or this Court's prior analysis of it. *Dumback*, 330 Mich App at 642. As explained above, to support a conviction under MCL 257.617(2), defendant must have been a driver of a vehicle who was involved in an accident, who "knew or had reason to know that the accident occurred," who did not stop or report it, and which resulted in death or serious impairment of a body function. MCL 257.617(2); *Dumback*, 330 Mich App at 642.[4] The only knowledge requirement set forth in MCL 257.617 is knowledge or reason to believe an accident occurred. The Court respectfully declines defendant's invitation to incorporate the knowledge requirement in MCL 257.619 into MCL 257.617 for purposes of this appeal.

As quoted earlier, the charging documents in this case alleged that defendant knew or had reason to believe that he had been involved in an accident. Defendant was afforded fair notice of the charge. There is no claim that he complied with the requirements of MCL 257.619. The substance of the accusation was adequately set forth in the charging documents.

B. INSTRUCTIONAL ERROR; INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that the trial court failed to properly instruct the jury on the knowledge element of the failure to stop charge and that defense counsel was ineffective for failing to object. We disagree.

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003).

---

[4] Defendant suggests that caselaw from the 1940s supports his contention that he was required to know not merely that he was involved in an accident but that he hit an individual. But defendant acknowledges that this older caselaw concerned a prior version of the statute. Defendant fails to discuss the 1940s cases individually or in depth or to explain how they apply to the current version of the statute. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Defendant has therefore not properly presented this aspect of his argument. *Id*. We rely on the more recent caselaw setting forth the elements under the current statute.

Defendant did not object to the instruction on the knowledge element of the failure to stop charge. The instructional issue is therefore unpreserved.

To preserve a claim of ineffective assistance of counsel, a defendant must raise the issue in a motion for a new trial or a *Ginther*[5] evidentiary hearing filed in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), or in a motion to remand for a *Ginther* hearing filed in this Court, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did not raise his ineffective-assistance claim in any such motions. That issue is thus unpreserved.

Because the instructional issue is unpreserved, it is reviewed under the plain-error standard. *Gonzalez*, 256 Mich App at 225.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *Heft*, 299 Mich App at 80. Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id*. Because no *Ginther* hearing was held, this Court's review is based on the existing record. *Abcumby-Blair*, 335 Mich App at 227.

A criminal defendant has a right to a properly instructed jury. *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). The jury instruction must include all elements of the crimes charged and may not exclude material issues or defenses that are supported by the evidence. *Id*.

The trial court instructed the jury as follows regarding the charge of failure to stop at the scene of an accident resulting in serious impairment or death:

> The Defendant is charged with the crime of failing to stop after an accident that resulted in serious impairment of—of a body function or death. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the Defendant was the driver of a motor vehicle. Second, that the motor vehicle driven by the Defendant was involved in an accident on public or private property as open—that is open to travel by the public.
>
> Third, that the Defendant knew or had reason to know he had been in [sic] involved in an accident. Fourth, that the accident resulted in serious impairment of a body function. . . .[6]
>
> Fifth, that the Defendant failed to immediately stop his motor vehicle at the scene of the accident in order to render assistance and give information required by law. The requirement that the driver immediately stop means that the driver must stop and park the car as soon as is practicable and reasonable under the circumstances and without obstructing traffic more than is necessary.

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] The court then provided a list of what may constitute serious impairment of a body function.

Defendant argues that the trial court did not properly instruct the jury regarding the knowledge element. He says that the jury should have been instructed that, to be found guilty, he must have known or had reason to know that the accident involved a person. In sum, defendant makes the same basic argument concerning the knowledge element that he made earlier with respect to his assertion of a charging defect. But as explained already, defendant's argument lacks merit. The trial court properly instructed the jury on the knowledge element by stating that the prosecutor was required to prove beyond a reasonable doubt that defendant knew or had reason to know that he had been involved in an accident. See *Dumback*, 330 Mich App at 642. Defendant has therefore failed to establish that the trial court committed an instructional error.

Defendant's ineffective-assistance argument likewise fails. "To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (quotation marks, brackets, and citation omitted). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

As explained, the trial court properly instructed the jury on the knowledge element. Defense counsel was not ineffective for failing to make a futile objection to the jury instruction. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## C. EVIDENTIARY ERROR; ARREST WARRANTS

Defendant argues that the trial court erred in admitting evidence of warrants for defendant's arrest that were outstanding at the time of the accident. He argues that the evidence should have been excluded due to lack of pretrial notice and because it was inadmissible. We disagree.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. at 722-723. Any preliminary questions of law are reviewed de novo. *Id*. at 723.

"Before being allowed to introduce evidence of other acts under MRE 404(b), the prosecution must provide timely notice to the defense . . . ." *People v Felton*, 326 Mich App 412,

420; 928 NW2d 307 (2018). A lack of timely pretrial notice may be excused for good cause shown. *Id*. At the time of trial in this case,[7] MRE 404(b)(2) provided, in relevant part:

> The prosecution in a criminal case shall provide written notice at least 14 days in advance of trial, or orally on the record later if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

The purpose of pretrial notice is "to promote reliable decision making, to prevent unfair surprise, and to offer the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice." *Felton*, 326 Mich App at 421 (quotation marks, brackets, and citation omitted).

The prosecution did not provide pretrial notice of the intent to introduce evidence of defendant's arrest warrants. Defense counsel's opening statement offered an innocent explanation for why defendant left the accident scene, i.e., he thought he hit a trashcan. Outside the presence of the jury, the prosecutor stated that, in light of defense counsel's opening statement, the prosecutor wished to introduce evidence of defendant's arrest warrants. The prosecutor argued that, if the defense was "going to propose that [defendant] left for innocent purposes," then the prosecution "should be able to show the jury that he had a reason to flee, and one of those reasons to flee was that he did have warrants out." The trial court ruled:

> Yeah, I do think that the door's been opened as to why he left the scene. And the Defendant's explanation that he thought he had just struck a waste container, trashcan, along the side of the road and left, the People are entitled to present evidence of ulterior motivations on the part of the Defendant to flee the scene. I don't want [the prosecutor] to get into the nature of the warrants, but you can obviously ask, [defense counsel].

The trial court's ruling was not erroneous. Good cause existed for the lack of pretrial notice. The prosecutor decided to seek introduction of the warrants as a result of defense counsel's opening statement offering an innocent explanation for defendant's leaving the accident scene, i.e., that he thought he hit a trashcan. This defense theory opened the door to evidence suggesting an ulterior motivation for defendant to flee the scene, including the fact that he had outstanding arrest warrants. The defense was not unfairly surprised. Defendant admitted during his police interview that he was aware of one of the warrants. The video of the police interview had been provided to the defense, and defense counsel stipulated that the video contained defendant's admission that he was aware of one of the warrants. Defendant also admitted during his trial testimony that he knew at the time of the accident that there was a warrant out for his arrest.

But even if there was not good cause to excuse the lack of pretrial notice, defendant has not demonstrated that the alleged error requires reversal. A preserved evidentiary error "is

---

[7] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxxxvii (2023). We rely on the versions of the rules in effect at the time of trial.

presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (quotation marks and citation omitted). As will be explained, the evidence was substantively admissible. Defendant has failed to demonstrate how he would have conducted the trial or presented his defense differently if he had received timely pretrial notice. See *id*. at 278-279 (an error related to the lack of proper pretrial notice under MRE 404(b)(2) did not require reversal when the evidence was substantively admissible and the defendant failed to demonstrate how he would have approached the trial or presented his defense differently if he had received proper pretrial notice).

We now turn to the substantive admissibility of the evidence. At the time of trial, MRE 404(b)(1) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if it is offered for a proper purpose under MRE 404(b), the evidence is relevant, and the probative value of the evidence is not substantially outweighed by unfair prejudice. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Upon request, a limiting instruction may be read to the jury. *Id*. MRE 404(b) is a rule of inclusion rather than exclusion. *VanderVliet*, 444 Mich at 64-65. "Relevant other acts evidence does not violate [MRE] 404(b) unless it is offered solely to show the criminal propensity of an individual to establish that he acted in conformity therewith." *VanderVliet*, 444 Mich at 65.

The prosecutor offered the evidence regarding outstanding warrants for a proper purpose under MRE 404(b). The purpose was to show defendant's motive for leaving the accident scene, in light of the defense suggestion that defendant left the accident scene for an innocent reason.

The evidence was relevant. At the time of trial, MRE 401 provided, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Evidence relevant to a noncharacter purpose is admissible under MRE 404(b) even if it also reflects on a defendant's character." *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). The evidence regarding the warrants tended to make it more probable that defendant had a motive to flee the accident scene other than the innocent reason he suggested.

"Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test . . . ." *Mardlin*, 487 Mich at 616. At the time of trial, MRE 403 provided, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court sought to limit any prejudicial

effect by precluding evidence regarding the nature of the warrants. Defendant has not shown that unfair prejudice substantially outweighed the probative value of the evidence.

Finally, the trial court read a limiting instruction to the jury. "A limiting instruction generally suffices to enable the jury to compartmentalize evidence and consider it only for its proper purpose." *Mardlin*, 487 Mich at 629 (quotation marks, brackets, ellipsis, and citation omitted). Accordingly, the trial court did not abuse its discretion by admitting the evidence regarding the warrants.

### D. EVIDENTIARY ERROR; GAMBLING HABITS

Defendant argues that the trial court erred in allowing evidence regarding defendant's gambling. He views the evidence as irrelevant and highly prejudicial. We disagree.

A trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Duncan*, 494 Mich at 722.

On direct examination by his counsel, defendant testified that, in the early morning hours of the date of the incident, he was at the Blue Chip Casino. He stated that he went to the casino because he "had been sick for about a day or two." In the afternoon, he left the casino to go back to Benton Harbor so he could go to the hospital for medical treatment. Defendant testified that, on his drive back, he dozed off a few times and then stopped at a gas station to take "a quick nap" before getting back on the road.

On cross-examination by the prosecutor, defendant testified that he had been at the casino for a couple days before this incident. He decided to get a room at the casino because he was sick. The prosecutor asked defendant why he did not stay home if he was sick, and defendant responded, "Because I didn't want to stay home because I was really sick, that's the reason why I left." The prosecutor asked if defendant was gambling at the casino. Defense counsel objected on the ground of lack of relevance, but the trial court overruled the objection because defendant "just said why he went to the casino, so now [the prosecutor] can inquire as to what he did while he was there." Defendant answered, "I did play." He "played" until he got a message from his daughter's mother that he should go to the hospital. He stated that he left the casino around noon that day but could not remember the exact time.

At the time of trial, MRE 402 provided, "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." At the time of trial, MRE 401 provided, " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "A material fact need not be an element of a crime or cause of action or defense but it must, at least, be in issue in the sense that it is within the range of litigated matters in controversy." *People v Zitka*, 335 Mich App 324, 333-334; 966 NW2d 786 (2020) (quotation marks, brackets, and citation omitted).

At the time of trial, MRE 403 provided, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "All relevant evidence is prejudicial; only unfairly prejudicial evidence may be excluded." *Danto*, 294 Mich App at 600. "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *Id*. (quotation marks and citation omitted). "Unfair prejudice may arise where considerations extraneous to the merits of the case, such as jury bias, sympathy, anger, or shock, are injected." *Id*. "[T]he prosecution does not have to use the least prejudicial evidence to make out its case." *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011).

Defendant testified on direct examination that he was at the casino on the date of the accident. He also testified that, after leaving the casino and before the accident, he stopped at a gas station to take "a quick nap." Defendant had not previously disclosed to the prosecution that he had stopped at a gas station to take a nap. Defendant's assertion that he stopped to take a nap was pertinent to the charge of reckless driving (of which he was ultimately acquitted). The timeline of events that day, including how long defendant was gambling and when he left the casino, was relevant in evaluating defendant's testimony that he stopped at a gas station to take a nap before the accident occurred. Defendant has not shown that the gambling testimony was unfairly prejudicial in that it injected considerations extraneous to the merits of the case or would be given too much weight by the jury. At worst, the prosecutor's cross-examination revealed that defendant actually gambled at the casino, but this was clearly implied by defendant's own testimony on direct examination. Any unfair prejudice was undoubtedly limited because the jury was already aware that he was at a casino before the accident, and the obvious reason for being at a casino is to gamble. The trial court thus did not err in admitting the testimony at issue.[8]

### E. LAY OPINION TESTIMONY REGARDING ACCIDENT

Defendant argues that the trial court erred by admitting lay opinion testimony of Lincoln Charter Township Police Officer Curt Wolff and Lincoln Charter Township Police Sergeant Ralph Bansen. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected to Officer Wolff's testimony on the ground asserted on appeal but did not object to Sergeant Bansen's testimony on

---

[8] Defendant also notes that the prosecutor referred to gambling during her opening statement and closing argument. But defendant does not present any argument or cite any caselaw regarding prosecutorial misconduct, also known as prosecutorial error. Nor does he address preservation or the standard of review for such a claim. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Kelly*, 231 Mich App at 640-641. Defendant has therefore not properly presented any prosecutorial-misconduct argument. *Id*. If he means to suggest that the prosecutor's statements render the alleged evidentiary error harmful, defendant's argument on this point need not be addressed because no evidentiary error occurred.

this ground. The issue is thus preserved for Officer Wolff's testimony but not for Sergeant Bansen's testimony.

Regarding the preserved aspect of the issue, a trial court's decision whether to admit evidence is reviewed for an abuse of discretion. *Duncan*, 494 Mich at 722.

With respect to the unpreserved aspect of the issue, an unpreserved evidentiary issue is reviewed under the plain-error standard. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019).

At the time of trial, MRE 701 provided as follows regarding lay opinion testimony:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Lay "opinions do not involve highly specialized knowledge, and are largely based on common sense." *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003). The weight to be accorded to a lay witness's opinion testimony is for the trier of fact to decide. *People v Hannum*, 362 Mich 660, 665; 107 NW2d 894 (1961). Expert testimony is governed by MRE 702, which, at the time of trial, provided:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 454-456; 540 NW2d 696 (1995), this Court concluded that testimony by two police officers regarding an accident qualified as lay opinion testimony rather than expert testimony. One officer testified concerning the basis of his observations of skid marks at the accident scene, and the other officer testified concerning the basis of his observations of photographs of the skid marks. *Id*. at 455. "The officers testified that they believed that [a certain defendant's] truck encroached on the right eastbound lane in which [the] plaintiffs' vehicle was traveling." *Id*. This Court held:

> The opinions were rationally based on the officers' perceptions based on examining photographs and the scene. After examining the evidence, the officers gave their opinion that the skid marks led them to believe that a vehicle traveling in the left eastbound lane encroached upon the right eastbound lane. [The defendant] himself testified that the skid marks came from his truck. The officers' opinions were helpful to a clear understanding regarding whether [the defendant's] truck encroached on the right eastbound lane. Because these opinions were reliable conclusions that could be made by people in general on the basis of the evidence of

-12-

the skid marks and were not overly dependent on scientific, technical, or specialized knowledge, we find that the trial court's decision to admit their testimony was not an abuse of discretion. *Mitchell v Steward Oldford & Sons, Inc*, 163 Mich App 622, 628-630; 415 NW2d 224 (1987). [*Richardson*, 213 Mich App at 455-456.]

In the present case, Officer Wolff testified regarding his observations at the accident scene. He saw Crider, the bicycle, and debris at the accident scene. After Crider was removed from the accident scene, Officer Wolff took pictures and video with his body-worn camera. A portion of the video footage in which Officer Wolff walked around the scene and narrated what he saw was admitted into evidence and played for the jury. Officer Wolff testified that there were no skid marks to indicate braking or an attempt to avoid a crash. There were tire tracks in the dirt on the side of the road. He did not observe any garbage cans in the immediate vicinity. The back tire of Crider's bicycle was destroyed.

When asked to describe what his observations indicated to him about the accident, Officer Wolff testified that there was "a vehicle crash involving a bicycle" and that "[t]he condition of [the] bicycle was the rear tire being, in effect, collapsed, and little, if any, damage observable by myself on the front tire, would mean that it was impacted at the rear." He discussed the debris field and how it indicated direction and impact. Officer Wolff continued:

> That gives you, again, a general idea of where that impact may have occurred. You look for, like, skid marks and things of that nature and—and some say, like, gouge marks. There were none of those that I could use. You also look at where the victim was lying. Judging from his injuries and the time that I arrived, I don't think he had been moved.
>
> The witness statements, you take into consideration—and I had interviewed two witnesses, their observations of the scene, what happens—or what they saw happen, things of this nature, and in that I would estimate that there was an accident where a gentleman was riding northbound on a bicycle. It was struck, I would say in my opinion, that bicycle, it was, maybe, just off the white line, on the right-hand side of the road, again, northbound. That's about what I observed.

In sum, Officer Wolff testified regarding his observations at the accident scene. He then offered a general idea of where and how the accident occurred on the basis of his observations. His testimony was not overly technical or scientific. The court properly admitted his lay opinion.

The portion of Sergeant Bansen's testimony cited by defendant did not involve a lay opinion. Sergeant Bansen merely testified about what he observed at the accident scene. He testified that he did not see any garbage cans, that it was a clear day with good light, and the nearby trees were not full of leaves. The trial court did not err in admitting this testimony.

Finally, it is notable that the trial court instructed the jury that testimony from police officers was to be judged by the same standard used to evaluate any other witness's testimony. "[J]urors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

## F. SHIFTING OF BURDEN OF PROOF

Defendant argues that his constitutional right to due process was violated because the prosecutor shifted the burden of proof onto defendant. Defendant reasons that the prosecutor was permitted to use defendant's silence about potentially exculpatory evidence, i.e., regarding his alleged stop at a gas station to take a nap, against him. Defendant's argument lacks merit.

This Court reviews de novo constitutional issues such as an alleged violation of due process. *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015).

Shifting the burden of proof or persuasion regarding an element of a charged crime onto a defendant violates the constitutional right of due process. *People v Fields*, 450 Mich 94, 113; 538 NW2d 356 (1995). However, "[w]hen a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *Id*. at 116. The prosecutor may use cross-examination to explore weaknesses in a defense theory. *Id*. at 117. "Arguments regarding the weight and credibility of the witnesses and evidence presented by defendant do not shift the burden to the defendant to prove his innocence, but rather question the reliability of the testimony and evidence presented." *Id*. at 107.

Defendant argues that the prosecutor shifted the burden of proof by suggesting that defendant failed to present exculpatory evidence regarding his stopping at a gas station to take a nap before the accident occurred. Defendant notes that, during cross-examination, the prosecutor asked defendant if he failed to tell the police during his interview about the gas station stop. Defendant observes that the prosecutor asked Sergeant Bansen, who interviewed defendant on the date of the accident, if defendant did not reveal the alleged gas station stop until he testified at trial.[9] The prosecutor also asked Sergeant Bansen if, in his experience, interviewees tend to reveal information that would help them get out of trouble, and Sergeant Bansen responded affirmatively. Defendant further notes that, during closing argument, the prosecutor stated, "Please consider why [defendant] would, three years later, have a secret defense that nobody was allowed to know about or investigate and that he did nothing to substantiate."

The prosecutor's questions and argument did not shift the burden of proof onto defendant. Defendant chose to testify and present a defense that hinged on his credibility. He claimed for the first time at trial, which was more than three years after the accident, that he stopped at a gas station to take a nap before the accident, in which he fell asleep while driving. This testimony was apparently part of a defense theory to suggest that defendant was not driving recklessly, which was pertinent to the charge of reckless driving (of which he was ultimately acquitted).[10] The prosecutor

---

[9] After hearing defendant's trial testimony, Sergeant Bansen looked into the matter and learned that the two gas stations located where defendant claimed to have stopped for a nap no longer had surveillance video from the date of the accident, which was more than three years earlier.

[10] Defendant suggests that his testimony about stopping at a gas station was somehow pertinent to the knowledge element of the failure to stop charge, but he fails to clarify how this evidence was relevant to that charge. Defendant also again repeats his misstatement of the knowledge element

-14-

was permitted to explore weaknesses in this defense theory. *Fields*, 450 Mich at 117. By choosing to assert a defense that was contingent on his own credibility, "defendant invited cross-examination and argument by the prosecutor about the validity and weight of the evidence in support of his theory." *Id*. at 118. The prosecutor did not shift the burden of proof but permissibly questioned the reliability of the evidence in support of the defense theory. *Id*. at 107, 116-117.

Moreover, the trial court instructed the jury multiple times over the course of the trial—including after defense counsel objected with respect to the present issue—that the prosecutor had the burden of proof. The court also instructed the jury that the lawyers' questions, statements, and arguments were not evidence. "[J]urors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

## G. CUMULATIVE ERROR

Defendant argues that he was denied a fair trial because of the cumulative effect of errors. We disagree.

This Court reviews a cumulative-error "issue to determine if the combination of alleged errors denied defendant a fair trial." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007).

"The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Id*. If no errors have been established, then "there can be no cumulative effect of errors meriting reversal." *Id*. As discussed, defendant has failed to establish any errors. Hence, there is no cumulative effect of errors meriting reversal.

## H. SENTENCING; FOURTH-OFFENSE HABITUAL OFFENDER

Defendant argues that the trial court erred in sentencing him as a fourth-offense habitual offender. Defendant concedes that he had two prior felony convictions, which were for assault with intent to rob while armed and larceny by conversion. But he contends that his third prior conviction, which was for attempted resisting and obstructing, was not a felony and therefore could not be used to enhance his sentence. Defendant's argument is unavailing.

This issue involves interpretation or application of the statutory provision regarding fourth-offense habitual offenders, MCL 769.12. Issues of statutory interpretation are reviewed de novo. *People v Jones*, 297 Mich App 80, 84; 823 NW2d 312 (2012). Unambiguous statutory language must be enforced as written. *Id*.

---

of that offense, this time relying on outdated analysis from a 2002 case, *People v Lang*, 250 Mich App 565, 572; 649 NW2d 102 (2002), that was superseded by a 2005 amendment of MCL 257.617. See 2005 PA 3. As explained earlier, the knowledge element of the current version of the statute has been properly set forth in more recent caselaw. See *Dumback*, 330 Mich App at 642.

-15-

MCL 769.12(1) provides, in relevant part, that "[i]f a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, . . . and that person commits a subsequent felony within this state," then the enhanced sentencing provisions apply. A "felony" is "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(f). Resisting and obstructing is a felony because it is punishable by up to two years in prison. MCL 750.81d(1). Therefore, attempted resisting and obstructing is an attempt to commit a felony and may be used to enhance a sentence under MCL 769.12(1). An attempt to commit a felony need not be a felony itself in order to be used for sentencing enhancement. *People v Slocum*, 156 Mich App 198, 200; 401 NW2d 271 (1986); *People v Davis*, 89 Mich App 588, 594; 280 NW2d 604 (1979). The trial court therefore did not err in using the attempted resisting and obstructing conviction to enhance defendant's sentence.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick